(Decided April 28th, 1859.)

---

# EDWIN A. ABBOTT *vs.* CONDUCE GATCH.

By a written contract between the owner and a mechanic, the latter contracted to put up a *mill,* guarantied to grind the best wheat flour, with the necessary bolts, elevators and rubber, for a *specified sum,* and in the contract was this clause: "No extra charges to be made unless a written agreement be made and attached to the contract." HELD:

1st. That this clause protects the owner against any charge for extra work beyond that stated in the contract, unless reduced to writing and attached to the contract, no matter what such work might be, whether *alterations* in the plan or mode of doing the work, or *additions* or *improvements* in and about the completion of the mill.

2nd. And it makes no difference that the extra work was ordered by the owner, provided it was on the mill; the builder may refuse to do such work, or he may assent under the protection afforded by this clause, but if he does extra work, without such protection, he *waives* the right to additional compensation.

3rd. The law presumes that the parties understood the import of this contract, and made it with knowledge of their mutual rights and obligations, and if one party omits to have the changes reduced to writing, they must, in view of the rights of the other, be deemed to have been made with reference to the *contract price*, unless there be proof of an *express waiver* of this clause, or a *promise to pay* for the extra work.

Contracts are to be interpreted and enforced according to the fair import of their terms, without reference to the hardship that may fall on the parties; if persons voluntarily express themselves in writing, they must be bound by the language employed.

In an action by the builder against the owner, to recover the contract price for building a mill, the latter may, by way of reduction of damages or recoupment, be allowed for losses sustained by him from not having had *the use* of the mill, resulting from the failure of the plaintiff to complete it at the time specified in the contract.

The *standard* by which, in such a case, the defendant's loss is to be estimated, is the *fair rent* of the mill for the time he was kept out of its use, by reason of the *plaintiff's failure* to complete it according to the contract, but he cannot recover for any delay beyond the contract time, caused by himself.

He cannot be allowed *estimated profits* from the working of the mill, because such are merely *speculative*, depending on the quantity of flour it might grind, the fluctuations of the prices of flour and grain, and the remote contingencies of his being able to procure wheat, labor and fuel, as well as the continuance of the mill in running order, free from accidents and loss of time from other causes.

Nor can he be allowed for such loss on the basis of profits which he might have made under a contract between himself and a third party, for the *employment* of the mill, not for a *rent certain*, but for a fixed price per bushel for wheat ground and elevated, which, to a certain quantity per year, was to be furnished by such third party.

Where *unliquidated damages* are claimed, either by the plaintiff as his cause of action, or by the defendant in reduction of the verdict, it is very difficult to apply a rule that will do full justice to the parties; as a general proposition, the injured party is entitled to be placed, as nearly as money can do it, in the same plight as if the contract had been faithfully executed.

Speculative profits are too remote to be allowed as damages, because they are not presumed to have been contemplated by the parties when they made the contract, and the subject of damages is to be dealt with as of the time the contract was made.

Abbott *vs.* Gatch.

But such damages as are incidental to, and caused by the breach, and may may be said to flow reasonably and naturally from it, and are not accidental or consequential losses, will be allowed.

Whether losses are incidental to, and caused by, the breach of the contract or not, must depend on the nature of the transaction, and in cases of building contracts, on the objects and uses for which the structure may be designed.

But where expected profits are such as the party ought to have contemplated as a reasonable and probable result of his breach of the contract, they will affect the measure of damages; and, in *some cases*, the profits that would have been derived from another contract, existing at the making of the one in suit, may be allowed.

By the 11th sec. of the 4th art. of the Constitution, the jurisdiction of the Superior Court of Baltimore city is made to depend on the amount of the "debt or damage claimed," and in case the plaintiff shall recover less than the sum of five hundred dollars, he shall be *allowed* or *adjudged to pay* costs *at the discretion* of the court." HELD:

That this provision of the Constitution authorises that court to render *judgments* on verdicts *for less* than five hundred dollars; the provision, as to costs, furnishes to suitors a sufficient inducement to institute their suits in the proper court, and not to invoke the jurisdiction of the Superior Court, except in good faith.

The 10th and 11th secs. of the 4th art. of the Constitution, defining the jurisdiction of the Court of Common Pleas and the Superior Court of Baltimore city, are not to be taken as intimations that each court was peculiarly adapted to the class of cases specially confided to it, but as showing a plain design to facilitate and promote justice by a division of business.

It is the duty of the courts so to interpret doubtful provisions of the Constitution, as to maintain the jurisdiction of the legal tribunals.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit,* brought on the 11th of April 1855, by the appellee against the appellant, for work done and materials furnished by the plaintiff, in and about the construction of certain mill machinery for the defendant. Plea, *non assumpsit.*

The plaintiff, upon call of the defendant, filed a bill of particulars, claiming for millwright work done in warehouse on East Falls Avenue, as *per contract,* $5000, and for *extra work and materials,* and for work put up and taken down and altered by order of the defendant, $674.90, making in all $5574.90, and leaving a balance, after deducting credits, including Millholland's bill of $1800, alleged to have been paid

without the order of the plaintiff and subject to alteration, of $1574.90. The defendant also filed three accounts in bar and as a set-off, claiming, among other things, $2261.47, as damages in not completing the mill as *per contract*, by which the defendant failed to grind 39,675 bushels of wheat and elevate the same. It was agreed that all errors in pleading are waived on both sides.

1*st Exception.* The plaintiff offered in evidence and proved a written contract between himself and the defendant, and the drawings and plans connected therewith. This contract was dated in March 1853, and by it "Gatch agrees to build and put up, in the best manner, in said Abbott's warehouse, on city block, four run of four and a-half feet burr mill-stones, together with the necessary *bolts, elevator* and *rubber*, in complete working order, and to guarantee the same so far as the material and work are concerned, *to make the best article of wheat flour;* also to put up *an elevator* to take the grain from the edge of the wharf, on the east side of the building, into the third story of the same; said Gatch to do all the work and to furnish all the materials above the first floor, as *per his drawings* made for said *mill,* and have the *whole complete and ready for use on or before the* 15*th of June next*, for the sum of $5000, to be paid" in the manner therein specified, and "said Abbott agrees to attach said mill to them, and to furnish said Gatch every facility to complete said work in the shortest time, to furnish said Gatch with such materials as he may have, at the lowest prices it can be procured at for cash; also, that the above payments be made punctual; *no extra charges to be made unless a written agreement be made and attached to this contract.*" The plaintiff then offered evidence, which was taken subject to exceptions, tending to show:

1st. That according to the drawings, the main conveyor was to be put upon the lower floor, and that, at the instance of the defendant, it was put on the floor above, and for want of fall would not work well in that situation, and was afterwards removed to its proper place below, and that the cost of this change was about $40.

2nd. That a patent smut machine or rubber, of a new pat-

tern, was put into the mill by the direction of the defendant, and against the opinion of the plaintiff, and that this rubber was not good and would not work, and was afterwards taken out and another put in, and that the cost of doing so was about $100.

3rd. That a branduster was put into the mill, and that a branduster was not then a usual or necessary part of a mill, and that the best article of wheat flour could be made without it, and that the one in question was put in at the instance of the Messrs. Wardens, acting under the permission of the defendant, and that the cost of putting it in was about $134.50.

4th. That instead of the usual square packing box, there was put in the mill, by the defendant's direction, a round packing box with self-packing machinery, which would cost about $100 more than the ordinary one.

There was also proof, that the defendant was generally there during the progress of the entire work, and that when the work on the machinery was begun, there were but two engines of thirty and fifteen horse power in the mill, and that an additional engine of sixty horse power was put in, while the work on the machinery was going on. It was also proved, that T. and H. Warden had made a contract with the defendant, by which they agreed to rent the mill, when completed, (which was to be by the 1st of July 1853,) upon the terms, that they were to employ and pay the labor and furnish one hundred thousand bushels of wheat each year for grinding, and to pay the defendant eight cents per bushel for grinding, and seventy cents per hundred bushels for the elevator carrying the grain from the wharf into the third story of the mill; all the expenses of labor, fuel or repairs, paid by them, to be charged to the defendant and deducted from this sum; and that they would have been prepared to fill their part of this contract if the mill had been ready.

It was also understood between the plaintiff and the defendant, that J. G. Millholland should be substituted in the place of the plaintiff, in respect to the cast and wrought iron work to be made for the mill by the plaintiff under his contract, and a contract under seal was executed by the defend-

Abbott *vs.* Gatch.

ant and Millholland, witnessed by the plaintiff, and dated the 3rd of March 1853. This contract was offered in evidence, and by it Millholland agreed to furnish, at the prices therein specified, all the cast and wrought iron work for the mill, and all "to be done by the 15th of June 1853."

Evidence was also offered, showing that no flour was got from the mill in July or August; that in August the mill worked badly, that the rubber was an inferior one, and the conveyor choked up next the burrs for want of fall, but when the changes in these were made as above stated, the mill worked finely, and was now making nine hundred barrels of flour per week. It was also proved on the part of the plaintiff, that if the iron work for the mill was all ready on the 15th of June, it would take from thirty days to six weeks to put it up.

The defendant then objected to the admissibility of the evidence offered on the part of the plaintiff, for the purpose of establishing any claim for any amount over and above the contract price of $5000. The evidence objected to, was the cost of erecting the branduster, of putting up the main conveyor as first erected, and of removing it and putting it as last put up; of putting up the first smut machine, or rubber, and taking it down; of putting up the second smut machine, and of the alleged change in the form of the packing box. The court *(Presstman J.,)* sustained the objection as to the cost of putting up the conveyor as first erected, and of putting up the first smut machine, but overruled it as to the other evidence. The defendant excepted to so much of this ruling as permitted evidence to go to the jury of the cost of erecting the branduster, of removing the main conveyor, and placing it as last put up, of taking down the first smut machine or rubber, and of putting up the second one, and of the alleged change in the form of the packing box.

*2nd Exception.* The defendant then offered proof of payments, as shown by his accounts in bar, and through the Wardens, as shown by his orders on them, and the notes they gave, which were also offered in evidence. These orders and notes were, many of them, including those endorsed by Millholland, and constituting payments to him, dated after the

15th of June 1853. The plaintiff then asked instructions, in substance as follows:

1st. That the defendant cannot *set-off*, in this cause, the damages claimed by him for the non-completion of the mill by the 15th of June 1853, as specified in his account, filed as a set-off in this case.

2nd. That the defendant is not entitled to *recoup* in this cause, the damages alleged to have been sustained by him by failing to grind $39,675 bushels of wheat under his contract with the Wardens, by reason of the non-completion of the mill on the 15th of June 1853, even if the jury find that such failure to grind did take place, and was caused by the non-completion of the mill.

3rd. If the jury find the execution of the contract of March 1853; between Millholland and the defendant, and that after the making and delivery of the iron work therein mentioned, it would require some time to put up the machinery and complete the work in the mill, and that after the 15th of June 1853, the defendant, from time to time, made the payments to the plaintiff of moneys due the latter under his contract of March 1853, as said payments have been offered in evidence by the defendant, and that, after the completion of the mill, the defendant accepted the same, then he has waived his right to have the mill completed by the 15th of June 1853, and cannot recoup, in this cause, the damages alleged to have been suffered by him in consequence of its non-completion at that date.

4th. That if the delay in the completion of the mill was the result of the conduct of the defendant, or his agent or agents, then he has no right to recoup, in this cause, damages for said delay.

5th. If the jury find that a rubber of a new description was originally put in the mill by the plaintiff, and the main conveyor originally placed above the floor by him, in both cases at the instance and by the direction and requirement of the defendant, and against the opinion and judgment of the plaintiff, and that after the mill was completed and put in operation, it was found necessary to take down this rubber and put in

another of a different description, and to change the position of the conveyor from above the floor to under it, then the plaintiff is not bound by his contract of March 1853, from recovering what the jury may find was the worth of the materials and labor furnished and done by him in taking down said first rubber and putting up the second, and in removing the conveyor from above to under the floor, provided the jury find he did so take down the first rubber and put up the second, and did so remove the conveyor at the request of the defendant.

6th. If the jury find that a branduster was put up in the mill by the plaintiff, at the instance and by the order and direction of the defendant, or of persons authorised by him to have the same put there, and that this branduster was not a necessary and customary part of a flour mill in complete working order to make the best article of wheat flour, then the plaintiff is not barred, by his contract of March 1853, from recovering such sum as the jury may find the putting up said branduster in the mill was worth.

7th. If the jury find that a packing chest was put in the mill machinery by the plaintiff, and that self-packing machinery was put in this chest by the plaintiff, at the instance and by the direction of the defendant, and that such self-packing machinery was not a necessary, usual and customary part of a flour mill in complete working order, sufficient to make the best article of wheat flour, then the plaintiff is not barred from recovering what such machinery, and the putting it up, may be worth, by the contract of March 1853.

8th. That the defendant is not entitled to set-off in this case any sums of money paid by him for repairs and alterations made in his mill after it was completed, unless the jury find that such alterations and repairs were necessary and proper to remedy defects or faults, or supply omissions in the mill caused by, and arising from, the non-performance by the plaintiff of the contract of March 1853, between himself and the defendant, or of any subsequent contract between them, which the jury may find from the evidence.

The court granted these prayers, the first by the consent of

the defendant, who excepted to the granting of the remaining seven and each of them.

*3rd Exception.* The defendant then asked instructions in substance as follows:

1st. If the jury find that the claim of the plaintiff in this case is that set forth in the bill of particulars filed by him, and that the written agreement given in evidence and proved by him was the contract under and by virtue of which the plaintiff commenced to furnish materials and do work in the erection of a mill in the defendant's warehouse, then, upon the true construction of said contract, the plaintiff can make no claim for extra or additional charges in the said mill, or for the said work or materials, unless upon proof of a new written agreement as provided for by said contract.

2nd. If the jury find the facts in the defendant's first prayer, and further find that said written agreement, proved by the plaintiff was not, subsequently to the making thereof, annulled and set aside by the plaintiff and defendant, but continued to be their agreement, then the plaintiff cannot claim for extra or additional charges for work or materials on said mill, unless he proves a new written agreement.

3rd. If the jury find the facts as stated in the defendant's first and second prayers, then the plaintiff cannot recover for any extra or additional charges claimed by him in his bill of particulars.

4th. The plaintiff cannot recover from the defendant, if the jury find the facts stated in the first and second prayers of the defendant, and further find, that no new agreement was made as a substitute for the first agreement, and that there cannot in this case be two distinct agreements, one in writing and the other by parol, if the parol alleged agreement applies to part of the work done.

5th. That, under the contract given in evidence, it was the obligation and duty of the plaintiff to select all the machinery to be used in the mill he was building for the defendant, and to determine where the same was to be placed, in the defendant's warehouse, and to put up the mill, do the work and furnish the materials in conformity with said contract, and

within the time therein specified, and the defendant in this case may recoup, in damages, the injury sustained by him from the failure of the plaintiff, (if any,) to perform said contract, unless the jury find that such failure was caused by the conduct of the defendant himself, and that the defendant's claim for damages must be confined to such injuries as resulted from the plaintiff's violation of the said contract, and were not produced by the defendant's own acts.

6th. That the defendant may recoup in damages a fair and reasonable rent for the time he was deprived, by the failure of the plaintiff, from using and enjoying the said mill, agreed to be erected at his warehouse by the plaintiff, if the jury find the facts stated in the defendant's first and second prayers, and further find, that the plaintiff, by his own fault or omission, failed to complete the said mill in the manner and mode agreed upon by him.

The court refused to grant these prayers and each of them, and to this ruling the defendant excepted.

*4th Exception.* After the action of the court, as stated in the preceding exceptions, and after the plaintiff's counsel had concluded the opening argument of facts before the jury, and before the defendant's counsel commenced his argument, the defendant offered his seventh prayer, as follows:

7th. That if the jury find, that when the alterations and additions were made, as stated in the plaintiff's fifth, sixth and seventh prayers, even if made as therein stated, no claim was made for any extra or additional compensation for the same or any part thereof, and no agreement was made by the defendant to pay for the same or any part of them, and that the defendant when he so directed the same, did so under the impression that he did not thereby make himself liable for any extra or additional compensation, and that the plaintiff made no claim therefor while the same were being done, and gave defendant no notice of any such claim before or while the said work was going on, then the plaintiff cannot recover for any such extra or additional work.

The plaintiff objected to the offering of this prayer, upon the ground, it was not offered in time under the rules of court,

which are to be considered as part of this exception, and it was agreed that the same might be read from the printed rules of said court. The court, however, overruled this objection, and held, that the prayer came in time, and then refused to grant the same, and to this refusal the defendant excepted.

The verdict was in favor of the plaintiff for $400, and judgment thereon was rendered on the 6th of November 1855. Afterwards, on the 2nd of January 1856, the defendant moved for a *non pros.*, and for a rule upon the plaintiff, to show cause why a *non pros.* should not be entered, and why the judgment, if any, should not be entered for costs alone, insisting, that as the verdict was for $400, no judgment can be entered for that amount by the Superior court. The plaintiff showed cause, and insisted, that the motion of the defendant is really and substantially a motion in arrest of judgment, and should have been made in accordance with the 41st rule of court, which is then set out as follows: "Every motion in arrest of judgment or for a new trial, shall be made before the rising of the court, on or before the second day succeeding that upon which the verdict shall have been rendered. All reasons for such motion shall be filed in writing within said time; and no others shall be thereafter assigned unless by leave of the court." The plaintiff, also, further insisted, that under the Constitution and laws of the State, the Superior court of Baltimore city, has jurisdiction of this cause, and has power to give judgment upon the verdict rendered by the jury, and that the motion of the defendant, in order to have the effect which it seeks, should be, to strike out the judgment in the case. The court overruled this motion, and ordered the judgment to stand as entered.

The defendant appealed from the judgment, and also from the order of the court overruling his motion, as above stated.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*George M. Gill* for the appellant:

1st. The question raised by the first exception, and by the plaintiff's 5th, 6th and 7th prayers, and the 1st, 2nd, 3rd,

4th and 7th, prayers of the defendant, relates to the claim for *extra work.* The written contract under which this mill was built, provides, that the plaintiff should, for a specified sum, do *all* the work and furnish *all* the materials for a mill to make the best article of wheat flour, and contains the express stipulation: "*no extra charges to be made unless a written agreement be made and attached to this contract.*" There is no evidence of any additional written contract, attached to this, nor indeed of any express parol contract in regard to extra charges, and it is submitted, that the defendant is not liable for any extra or additional work or materials, unless a new written contract was entered into, or unless the first contract, was, by agreement of the parties to it, cancelled or annulled, and there is no evidence that it was so cancelled. The cases of *The Baltimore Cemetery Co. vs. Coburn,* 7 *Md. Rep.,* 202, and *Miller vs. McCaffrey,* 9 *Barr.,* 245, are conclusive adjudications, upon the construction of such a clause as this in similar contracts. If the workman is at liberty, upon any trifling alteration in or addition to the work, to throw the whole contract aside, and that too in the face of a stipulation in it, pointing out the mode by which such changes and additions are to be brought within its terms, then it is utterly useless for parties ever to make such contracts.

2nd. The question presented by the plaintiff's 2nd and 3rd prayers, and the 5th and 6th prayers of the defendant, relates to the right of the defendant to *recoup* damages for the non-completion of the mill, by the time agreed upon in the contract. By that contract the plaintiff agreed to have the whole work *complete,* and the mill *ready for use,* on or before the 15th of June 1853. In this he failed, and the mill was not ready for use before the following September. If injured by this failure of the plaintiff to complete the work at the time agreed upon, the defendant clearly has the right to *recoup* in damages the injury sustained thereby, if the same was produced without any fault on his part. The measure of damages in this case must be, what the mill would have profited the defendant under the agreement which was made by him with the Wardens, and which agreement, it was proved, they were

ready on their part to fulfill, and would have carried out had the mill been ready for use.    In support of this position, see 9 *How.*, 213, *Withers vs. Greene.,* 14 *How.*, 444, *Winder vs. Caldwell.*  11 *How.*, 478, *Van Buren vs. Digges.*

3rd.  The verdict in this case being for $400 only, an amount not within the jurisdiction of the Superior court of Baltimore city, no judgment could be entered in that court upon this verdict.

*1. N. Steele* for the appellee.

1st.  The first exception, as to the admissibility of certain evidence, the 5th, 6th and 7th prayers of the appellee, and the 1st, 2nd, 3rd, 4th, and 7th prayers of the appellant, all involve the general question as to the effect of the clause in the contract, that "no extra charges to be made unless a written agreement be made and attached to this contract," upon the right of the plaintiff to recover for work and materials furnished, in taking down the main conveyor and putting it where it was originally intended to be, in taking down the first rubber and putting up the second, in putting in the branduster, and in putting up self-packing machinery for the packing chest. Upon this question, it is insisted for the appellee, 1st.  That by the true construction of the original written contract between the parties, the work and materials above mentioned were not embraced in it, and were not subject to the operation of the clause requiring a written agreement for extra charges.    2nd. That even if this clause of the contract is held to extend to all work and materials that went into the mill-machinery, still, if the particular work and materials, now the subject of controversy, were not such as the plaintiff could have been legally required to do and furnish, by the terms of the contract, and the defendant, without entering into any new written agreement, did, by a verbal order, direct them to be done and furnished, then he will be held to have waived, as to them, the stipulation as to a written agreement.    3rd.  That if the defendant gave a verbal order for work and materials, not called for by the contract, and the same were accordingly done and furnished by his direction, it would be a fraud in him to seek to shield him-

self from responsibility under the stipulation in the original contract. 4th. That even if work and materials, not called for by the contract, were within the operation of the stipulation as to a written agreement, still, a verbal order by the defendant to do and furnish such work and materials, fulfilled by the plaintiff, constituted a new agreement, or was, at least, a recision, as to such work and materials, of the stipulation for a written agreement. In support of these views see 1 *Parson's on Cont.*, 541, 542. 7 *Md. Rep.*, 202, *Balto. Cemetery Co. vs. Coburn.* 5 *Barn. & Adol.*, 58, *Gross vs. Nugent.* 2 *Parson's on Cont.*, 190, 191, and cases there cited.

2nd. The 2nd prayer of the appellee, and the 5th and 6th prayers of the appellant, all relate to the right of the latter to recoup, in this action, damages alleged to have been sustained by him in consequence of the appellee's breach of contract. The non-completion of the mill-machinery on the 15th of June, is the only breach of contract by the appellee, in reference to which there is any evidence of damage to the appellant, and that evidence goes to show, that if the mill had been completed at that time, the Wardens would, under their contract with the appellant, have furnished a large amount of wheat to be ground, on which he might have made profits. As to these prayers, it is insisted for the appellee, 1st. That the damages for loss of profits by not grinding, are too remote and uncertain to be recouped, and that the defendant, in an action for work and materials, can only recoup damages for such breaches of contract, on the part of the plaintiff, as make that which the defendant gets, less valuable than by the contract it ought to have been, and when he has received that which he bargained for, he cannot recover damages for a breach of contract by which he has sustained collateral injury. 1 *Md. Rep.*, 342, *Middlekauff vs. Smith.* 21 *Wend.*, 342, 344, 350, *Blanchard vs. Ely, et al.* 7 *Hill*, 62, 68, *Masterton vs. Mayor, &c., of Brooklyn.* 2 *Smith's Lead. Cases*, 14, 15. 9 *How.*, 227, 230, *Withers vs. Greene.* 8 *Mees. & Wels.*, 858, 869, 871, *Mondel vs. Steel.* 10 *Barn. & Cress.*, 416, *Walker vs. Moore.* 2nd. That the 5th prayer of the appellant was prop-

erly refused, because it threw upon the appellee the unqualified and absolute obligation and duty to select all the machinery, &c., when there was evidence that the appellant himself had selected machinery, &c.; because it was too general in not specifying any particular failure of the appellee to perform the contract, leaving the jury, at large, to decide what would constitute a breach of the contract; and because it shut out the evidence of waiver, by the appellant, of the non-performance of any part of the contract, or left it to the jury to determine what would constitute a waiver. 3rd. That the 6th prayer of the appellant was properly rejected, because there was no evidence of what was a fair and reasonable rent for the mill; because it gave the defendant the right to recover rent, if the plaintiff had not completed the mill, not at the time, but in the manner and mode agreed upon, and thus left the construction of the contract to the jury; and because it made the failure of the plaintiff to complete the mill, by his own omission, an absolute ground for recoupment, without regard to the evidence of waiver, acceptance and assent of the defendant.

3rd. As to the third prayer of the appellee, it is insisted, that the contract between the appellant and Millholland for the iron work, to be done by the 15th of June, with the fact that it would require some time to put the iron work up in the mill, and the payment of moneys, and acceptance of the work after the 15th of June, constitute a waiver of the appellant's right to have the mill completed on that day, and no damages can be recouped for its non-completion. 4 *Md. Rep.,* 509, *Marshall vs. Haney.* 1 *Fairfield,* 414, *Baldwin vs. Farnsworth.* *Chitty on Cont.,* 739. 3 *Mees. & Wels.,* 387, *Holme, et al., vs. Guppy, et al.*

4th. It is insisted, that the appellant's motion for a *non pros.* was properly overruled by the court below, because that court had jurisdiction of the cause, and power to enter the judgment, under the Constitution and laws of the State.

Tuck, J., delivered the opinion of this court.

The plaintiff, the present appellee, contracted to put up a mill guarantied to grind the best wheat flour, with the neces-

Abbott *vs.* Gatch.

sary bolters, elevator and rubber, for the sum of five thousand dollars. In the contract there is this clause: "No extra charges to be made unless a written agreement be made and attached to the contract." In the progress of the work, alterations were made, and portions of the mill put in, as the plaintiff contends, not embraced by the terms of the contract, without the parties availing themselves of the above provision, and one of the questions in the cause is, can the plaintiff demand additional compensation beyond the sum stipulated for the entire work? The claim is placed on the ground, that the defendant interfered with the work by directing or authorizing these departures from the original design, and in some instances, against the opinion of the plaintiff. Whether these circumstances can aid him must depend on the object of the parties in inserting this clause, and the interpretation we are to put upon the entire agreement.

It is manifest, that the object of such provisions in building contracts is certainty as to the terms on which the work is to be done, in order that the parties may know how much one is to pay and the other to receive for such changes and alterations as may be made. Neither has a right to change the plans without the other's consent; but, as this may be done by agreement, when alterations are specified in writing and attached to, they become parts of, the original contract, and the builder may recover for such work according to the agreement in that behalf. The present plaintiff undertook to erect a mill, a work requiring practical knowledge and skill in that branch of the mechanic arts, on which it is to be presumed, the defendant relied in giving him the contract. It was his right, as well as duty, to determine what was necessary to complete such a mill as he had contracted to put up; and as to all matters not mentioned in the agreement, or laid down on the plans, he was solely responsible. He was under no obligation to receive suggestions from Abbott; on the contrary, if he deemed them unsuitable or impracticable, or likely to cause increased expense, he should have resorted to the contract, as containing all that he was required to perform, and insisted on having the additional work brought within its terms, as well for his own

protection, as to prevent misapprehension on the other side. The words in question protected Abbott against extra charges. They cannot mean that no extra charge was to be made for what the contract required, because the very office of that was to define what was to be done and to fix the price. We take the true construction to be, that there was to be no charge for extra work, that is, for any work beyond that stated in the contract, no matter what it might be, whether alterations in the plan or mode of doing the work, or additions or improvements in and about the completion of the mill, unless reduced to writing and attached. It makes no difference if the extra work was ordered by the owner, provided it was on the mill. As we have said, the builder need not accede to the owner's views; he may refuse, or he may assent, under the protection afforded by this clause. If extra work be done without it the right to additional compensation is waived. Any other interpretation of such words would make them valueless to the parties. The appellee's view, if adopted, would deny to the owner the privilege of suggesting any, the most trivial, alteration of the work, without incurring the risk of opening the whole contract; then the written agreement would be substituted by a mere *quantum meruit* claim for work and labor, to be afterwards adjusted upon uncertain oral testimony. And, in many cases, his mere presence on the premises might subject him to extra charges, on the ground of acquiescence in alterations made by the builder, when it might well be supposed there was to be no additional charge, because not previously attached to the contract. 5 *G. & J.*, 263, 264. 6 *H. & J.*, 89. 9 *Barr.*, 245. We cannot distinguish this agreement from that passed upon in the case of *Baltimore Cemetery Co. vs. Coburn*, 7 *Md. Rep.*, 202. The same considerations apply to both. To hold a party liable in the face of such a stipulation, would be to turn his plain words into something that he had not assented to. In 9 *Barr.*, 245, extra work was not allowed for, though done with the owners' knowledge, and without objection, and afterwards accepted by them. There, the contract did not require the agreement for extra work to be in writing, but the terms were very explicit,

viz: "At any time during the progress of the building, the committee reserves the right to direct any alteration or variation from the original plan, so as not to vary therefrom in any very essential manner, so as to cause any material extra expense to the building; but any alteration suggested by them shall be made, and the expense, if any, shall be agreed upon at the time; but no extras shall be allowed under any pretence whatever." Extra work was done with the knowledge of the committee, who made no objection, and some of them approved of the plaintiff's acts. The court held, that in the face of such an agreement, affording ample protection to both parties, the action could be maintained only, "by clear and satisfactory evidence of a new, distinct and independent contract, authorizing the alterations, and expressly agreeing to pay for them a certain fixed price, or what they may be reasonably worth," and that if the contract was to be thrown open, because of the presence of the committee while the work was going on, without objection to the changes, though often conversing about them, and because of their acceptance of the work, it would be useless to put such agreements in writing. This may appear to be a harsh construction, where the owner has received the benefit of the work; but the law is well settled, that contracts are to be interpreted and enforced, according to the fair import of their terms, without reference to the hardships that may fall on the parties. *Wagner vs. White,* 4 *H. & J.,* 566. 5 *H. & J.,* 143. *Dorsey vs. Smith,* 7 *H. & J.,* 345. If persons voluntarily express themselves in writing, they must be bound by the language employed. *McElderry vs. Shipley,* 2 *Md. Rep.,* 25. The law presumes, that they understand the import of their own contracts, and to have entered into them with knowledge of their mutual rights and obligations. And if, in a case like this, one party omits to have the changes reduced to writing, they must, in view of the rights of the other, be deemed to have been made with reference to the contract price, unless there be proof of an express waiver of that clause of the contract, or a promise to pay for the extra work. *Hort vs. Norton,* 1 *McCord,* 22. *Wilmot vs. Smith,* 3 *C. & P.,* 453. 7 *H. & J.,* 345, 363. 1 *Gill,* 311. 5 *Md. Rep.,* 121. 9 *Pick.,* 298.

Abbott *vs.* Gatch.

It follows from these views of the agreement, that the court below erred in disallowing the defendant's objection to the evidence of work claimed as extra or additional, and also in granting the plaintiff's 5th, 6th and 7th prayers; and this ruling renders it unnecessary to pass upon the 1st, 2nd, 3rd, 4th and 7th prayers of the defendant, relating to the same points.

The defendant having made a claim, by way of reduction of damages, for losses sustained by not having had the use of the mill, according to the contract, prayers were offered on both sides on that subject, which we are now to consider. In many cases a defendant may recoup for damages, resulting from the plaintiff's failure to execute his contract. Formerly a cross-action was deemed to be the proper remedy; but now the law is settled, that the matter may be urged by way of defence. We do not say, that a defendant can always recoup where he could sue as plaintiff, but that the principle on which it has been allowed will apply here. 2 *Parsons on Cont.*, 246. *Sedgwick*, *Ch.*, 17. *Beall vs. Pearre*, 12 *Md. Rep.*, 550.

Where unliquidated damages are claimed, whether by the plaintiff, as his cause of action, or by the defendant, in reduction of the verdict, it is very difficult to apply a rule that will do full justice to the parties; the most that courts can accomplish is to approximate that result, with the limited and imperfect aids that the parties may furnish. As a general proposition, one who has so suffered, is entitled to be placed as nearly as money can do it, in the same plight as if the contract had been faithfully executed. But there are many transactions in which this is wholly impracticable, because of the impossibility of determining, after the occurrence, what might have happened under a different state of things. The books furnish numerous examples, in which trials at law have come far short of meeting the demands of justice, though the result could not have been different in the particular cases without letting in a most loose and uncertain measure of damages, and very dangerous, because liable to be abused. The law, for the purpose of preventing wrong and injustice, and to make compensation as far as regard for truth and certainty would

allow, has laid down certain rules for the government of courts and juries, and among these we find that speculative profits are too remote to be included in the estimate, because they are not presumed to have been contemplated by the parties at the time of making the contract. But such damages as are incidental to and caused by the breach, and may be said to flow reasonably and naturally from such breach, and are not accidental or consequential losses, will be allowed; and whether they are of the one character or the other must depend on the nature of the transaction, and, in cases of building contracts, on the objects and uses for which the structure may be designed. The reason stated for discarding expected profits, as an element in the estimation of the loss, is, that the party charged is not presumed to have made his contract with reference to such results, unless the special circumstances are communicated to him at the time; but where they are such as he ought to have contemplated, as a reasonable and probable result of his breach, they will affect the measure of damages in favor of the complaining party. Applying these rules, there is no difficulty in disposing of the prayers under consideration. Here, the contract was to build and put up a mill for grinding flour, by a named day, which was of the essence of the agreement. *Watchman vs. Crook*, 5 *G. & J.*, 239. It is a necessary presumption, that the plaintiff knew that his work was intended for use and profit, by rent or otherwise, and that in contracting to complete the mill by a certain day, he acted with reference to these purposes as important to the defendant, and that he contemplated the loss of such profit as a reasonable and probable result of a failure on his part. He is thereby brought within the principles we have stated, as fairly deducible from adjudged cases of the highest authority.

But the inquiry here is, what standard of value for the loss of time shall we apply? We cannot adopt any estimate of profits that Abbott might have realized from working the mill, because these were merely speculative, depending on the quantity of flour it might grind, the fluctuations of the market, as to prices of flour and grain, and the remote contingencies of his being able to procure wheat, labor and fuel, as well as the

continuance of the mill in running order, free from accidents and loss of time from other causes. Nor can we charge the complainant on the basis of the contract between Abbott and Warden, for the employment of the mill, because, it was not for a rent certain, but depending on most of the contingencies above mentioned, and we are not to presume, that Gatch made his contract in contemplation of it, as a measure of damage resulting from his failure to complete the mill by the time fixed in the contract. It makes no difference, that Warden proved that his firm were ready to have gone on with, and fulfilled their contract, if the mill had been finished on the 15th of June, because we must deal with the subject, as of the time of the contract between the parties to this suit. In some cases, the profit that would have been derived from another contract existing at the making of the one in suit, may be allowed. An example is furnished in the case of *Masterton vs. Mayor of Brooklyn,* 7 *Hill.,* 62, where the distinction is clearly stated by Nelson, Ch. J., whose opinion, as well as 2 *Kent's Com.,* 480, *note,* and *Sedgwick,* 76, are quoted, in the most recent English works on the subject of damages, as having stated the law on correct principles. *Mayne on Damages, ch.* 2. *Powell on Evidence, ch.* 21. 1 *Exch.,* 855. 2 *Parson's on Cont.,* 458, *et seq.*

Considering the uncertainties attending the milling business, and the difficulty of defining a safer guide for juries, we are of opinion, that a fair rent is the most reasonable standard of the defendant's loss by reason of the plaintiff's failure to complete the mill. This we take to be consistent with well established principles, and the doctrine recognized in this court, in a case where the measure of damages for loss of the use of a mill was a point in contest. *Smith vs. Middlekauff,* 1 *Md. Rep.,* 329. Though the courts in Vermont appear to allow evidence of what the mill could have earned. 18 *Verm.,* 620.

We think, therefore, the court was right in granting the plaintiff's *second* prayer. The 5th and 6th prayers of the defendant also relate to his claim for damages. They were properly refused, because the fifth claimed damages, by way of reduction, for loss of the use of the mill from the time originally

agreed upon for its completion, when the evidence shows the time was extended as the necessary consequence of the defendant's agreement with Millholland, by which the latter was allowed until the 15th of June for supplying portions of the machinery, and it would require several weeks after their delivery to complete the mill. He was claiming damages for delay that he had himself caused. And for this reason, also, the 3rd and 4th prayers of the plaintiff were properly granted. There was no evidence of the value of the mill to authorize the jury to reduce the verdict, by an allowance of rent, for the loss of time; the defendant's 6th prayer was, therefore, well refused. The exception to the plaintiff's eighth prayer was abandoned at the bar.

The remaining question arises on the defendant's motion for a *non pros.*, which, in view of its importance, we shall decide without reference to the time at which it was made.

The 10th and 11th sections of the 4th article of the Constitution, define the jurisdiction of the Court of Common Pleas and of the Superior Court. They are not to be taken as an intimation, that each court was peculiarly adapted to the class of cases specially confided to it, but as showing a plain design to facilitate and promote justice by a division of business, and this was to be insured by preventing the accumulation of suits in the Superior Court, at the option of plaintiffs. The jurisdiction is made to depend on the amount of the "debt or damage claimed," and "in case any plaintiff shall recover less than the sum of five hundred dollars, he shall be allowed or adjudged to pay costs, in the discretion of the court." The Judiciary act of 1789 gives jurisdiction where "the matter in dispute exceeds the sum or value of five hundred dollars, exclusive of costs, to be made to appear to the satisfaction of the court." Under this act it has uniformly been held, that the damages claimed in the writ is the test of jurisdiction, even in cases where the demand was on a note for less than five hundred dollars; if the verdict be for less the plaintiff does not recover costs, but, at the discretion of the court, may be adjudged to pay costs. 8 *Cranch*, 229. 3 *McLean*, 91. 2 *Wash.*, 463. 16 *Peters*, 97. If the point before us rested merely on

the words, "debt or damage claimed," we might find in these cases authority for overruling the defendant's motion; but the Court of Appeals, prior to the present Constitution, in construing the acts of Assembly for the recovery of small debts, where the amount of the "debt or damage laid or claimed" gave jurisdiction, decided, that in actions *ex contractu*, these words meant the sum recovered, and if that was less than the sum named in the law, the county courts had not jurisdiction, but that a different rule prevailed in cases *ex delicto*. 1 *Gill*, 33, 203. 3 *Gill*, 251. The present court, recognizing this authority, applied the doctrine in *Ott vs. Dill*, 7 *Md. Rep.*, 251, and hence, the judgment on this point could not be sustained, unless the cases are distinguishable by reason of the above clause in the Constitution relating to costs. Looking to the design which we have imputed to the Convention, and to the duty of the court so to interpret doubtful provisions as to maintain the jurisdiction of the legal tribunals, we are of opinion that the eleventh section must be understood as authorizing the Superior Court to render judgments on verdicts for less than five hundred dollars; the provision as to costs, furnishing to suitors a sufficient inducement to institute their proceedings in the proper court, and not to invoke the jurisdiction of the Superior Court, except in good faith. These words were certainly intended to enable the judge to protect himself from an undue amount of business, by holding the costs *in terrorem* over such as might be disposed to carry their causes to that court without reasonable expectation of recovering five hundred dollars or more. If this is not the proper interpretation of the section, the court's discretion means nothing, because, on general principles, the costs would follow the judgment of *non pros.*, and could not fall on the defendant. We cannot suppose that it was designed to award costs to the plaintiff where he is denied the benefit of his verdict, when this obvious result of a different construction may be avoided by treating the exercise of the discretion as a penalty to be inflicted on those who should implead defendants in that court, without a *bona fide* belief that their cases were within the prescribed jurisdiction. The motion for a *non pros.* was properly overruled.

If it clearly appeared, by the record, that the trial and finding of the jury were confined to the items of extra charge, there would be no reason for a *venire de novo*, all the evidence on that part of the case being now excluded. But the pleadings and proofs relied on set-off and payments on the original contract, and as it does not appear but that the verdict was made up, in part, of a balance due on that account, the plaintiff will have leave to apply for a *procedendo.*

*Judgment reversed.*

(Decided April 28th, 1859.)