# REA CONSTRUCTION COMPANY *v.* STATE
# ROADS COMMISSION OF MARYLAND

[No. 34, September Term, 1961.]

*Decided November 7, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*David C. Green* for the appellant.

*J. Thomas Nissel* and *Earl I. Rosenthal, Special Attorneys,* with whom were *Thomas B. Finan, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal requires an interpretation of the meaning of some of the terms and provisions embodied in a road-building contract by and between the Rea Construction Company (Rea or contractor), the plaintiff-appellant, and the State Roads Commission of Maryland (S. R. C. or commission), the defendant-appellee.

On February 16, 1956, the S. R. C. awarded a contract to Rea for the reconstruction and modification of approximately 2.67 miles of highway in Montgomery County known as the Viers Mill Road. The contract price was estimated at $1,387,142.03, but payment for concrete used was based on specified unit prices for square yards of pavement nine inches in depth at each side and in the center of each poured strip (or other preestablished limits) of concrete surfacing. And, although the contract specified a thickness of nine inches, it was further provided that the commission could allow a tolerance of not more than one-quarter of an inch from the required thickness without imposing a penalty for a deficiency.

The contractor contends that from the very beginning of the work, it was required to pour concrete of a greater thickness than nine inches because the engineers and inspectors of the S. R. C. refused to agree that the awarded contract called for paving of an "average" thickness of nine inches and insisted that the "minimum" thickness should be nine inches. The claim is that this interpretation of the contract by the commission personnel resulted in the pouring of a concrete pavement of an average thickness of 9.565 inches—an average of 0.565 inches for the 2.67 miles paved—that aggregated 1780.11 cubic yards of concrete not required under the terms of the contract, and that the value of such excess concrete, for which the State refused to pay, was $33,038.84.

On the other hand, the S. R. C., besides denying that it had done anything unusual in requiring a minimum of nine inches in conformity with the specifications, or that it had demanded a greater thickness than that called for by the contract, contends that the overage, which it claims was only 0.320 inches on 87,109 square yards of main line paving, was the result

of the breakdown of the grader-log and other equipment of the contractor, and that it was customary for contractors to pour an overage of concrete in this type of construction. In addition to this, the S. R. C. points out that Rea did not give the commission written notice of its intention to claim extra compensation, and insists that, as an agency of the State, it is immune from suit.

The trial court, sitting without a jury, found as a fact that at no time did the commission or anyone require more than the nine inch depth specified in the contract. In weighing the conflicting evidence as to what caused the generous pouring of concrete, the court came to the conclusion that the average depth of the paving was not "too much out of line" with the thickness of other paving previously done by Rea and other road contractors and decided that the plaintiff had not met the burden of proving that the pouring of concrete in excess of the required standard was the fault of the defendant. Finally, because the contractor had not given notice (before the work was commenced) of an intention to claim extra compensation, the court further found that the contractor had waived its claim, and entered a judgment for the S. R. C. We think the court was not in error in so doing.

It may be that the S. R. C. was immune from suit under the circumstances, but, for the purposes of this case, we shall assume that it was not and decide the controversy on its merits.

As previously stated the specifications incorporated in the contract between the parties provided that the concrete to be poured should be "nine (9) inches in depth at the sides and nine (9) inches in depth at the center." Section 3.47-33 (construction methods) of the specifications, concerning "tolerance in pavement thickness," provides:

> "(a) After the pavement is placed and before final acceptance the thickness as determined by measuring cores cut from the pavement or direct measurements of the edge thickness shall not be deficient more than one-quarter of an inch from the required thickness.
>
> "(b) The Commission will not be liable for excess thickness in pavement placed.

"(c) For sections of pavement which are deficient in thickness, as shown by cores, by an amount greater than one-quarter inch, the following deductions will be made from the Contractor's payments:"

The four remaining subsections, (d), (e), (f) and (g), set forth in detail the consequences of deficiencies in the required thickness.

In the interpretation of contracts, it is elementary that unless there is some ambiguity in the wording of a contract, the intention of the parties must be gathered from the contents of the instrument itself. *Coopersmith v. Isherwood,* 219 Md. 455, 150 A. 2d 243 (1959). And, where the parties have expressed their intention in clear and definite terms, the contract must be interpreted in accordance with the true meaning of the phraseology used. *Strickler Eng. Co. v. Seminar,* 210 Md. 93, 122 A. 2d 563 (1956). As we read it, the meaning of the provisions of § 3.47-33, *supra,* is not only clear and definite but was obviously embodied in the contract primarily for the benefit and protection of the S. R. C. The required thickness is nine inches, not an average of nine inches. On the other hand, the limited tolerance allowed without deductions or penalties is undoubtedly a recognition of the practical difficulty (if not impossibility) of laying a strip of concrete having a precise and uniform thickness throughout its entire length and breadth. But, in the event there is an overage, it is certain that the commission is not liable for the excess thickness under normal circumstances. Moreover, definite deductions and strict penalties are provided in subsections (d) through (g) in the event there is a variation of more than one-quarter inch from the specified standard thickness or depth. We think the trial court was correct when it decided that the contention of the appellant was not supported by the evidence.

But, even if the contention of the appellant—to the effect that it was either directly or indirectly ordered to do more than was required of it—is accepted, it is not disputed that Rea did not give the notice contemplated by § 1.5-11 (disputed claims). The pertinent part of that section provides:

> "[W]here the contractor deems extra compensation is due him for work or materials not clearly covered in the contract, or not ordered by the Engineer as an extra, * * * the Contractor *shall notify the Engineer in writing of his intention to make claim* for such extra compensation before he begins the work on which he bases the claim. *If such notification is not given,* or the Engineer is not afforded proper facilities by the Contractor for keeping strict account of actual cost, *then the Contractor hereby agrees to waive the claim for such extra compensation."* [Emphasis added.]

See also the provisions of § 1.9-3 (extra work), where it is provided that "[w]ork performed without previous written order for same by the Engineer will not be paid for."

The courts are in general accord that a provision in a contract similar to that under consideration is valid, and, in the absence of conduct operating as a waiver or raising an estoppel hold that failure to give notice of an intention to claim extra compensation in the manner and at the time specified precludes recovery therefor. See *Enochs v. Christie,* 291 P. 2d 200 (Cal. 1955). See also *Commercial Inv. Co. v. Herman,* 131 Atl. 223 (N. J. Chancery 1925). Cf. *Eastover Stores, Inc. v. Minnix,* 219 Md. 658, 150 A. 2d 884 (1959). And see *Abbott v. Gatch,* 13 Md. 314 (1859), and *O'Brien v. Fowler,* 67 Md. 561, 11 Atl. 174 (1887), wherein the holdings were to the effect that a contractor is not entitled to compensation for additional work, under a contract providing that there shall be no charge for extra work unless authorized in writing, if such written authorization had not been obtained.

We think the failure of the contractor to comply with § 1.5-11, *supra,* is decisive. Clearly, compensation was not recoverable for the additional work or materials when the contractor had not given the requisite notification of its intention to claim payment therefor.

For the reasons stated the judgment for the defendant-appellee must be affirmed.

*Judgment affirmed; appellant to pay the costs.*