CHESAPEAKE ISLE, INC., ET AL. *v.* ROLLING HILLS DEVELOPMENT COMPANY, INC.

[No. 34, September Term, 1967.]

*Decided January 9, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, BARNES, McWILLIAMS and FINAN, JJ.

*Edwin B. Fockler, III,* for appellants.

*Edward D. E. Rollins, Jr.,* for appellee.

FINAN, J., delivered the opinion of the Court.

This appeal, which reaches the Court on an agreed state-
ment by the parties in lieu of pleadings and evidence, arises
out of a suit for Declaratory Decree (Md. Code, Art. 31A),
interpreting certain release provisions in a mortgage executed
between appellants (mortgagors) and appellee (mortgagee).
An opinion was filed by the lower court on May 19, 1966, but
additional issues arose, giving rise to a second petition for the
interpretation of the release provisions, and for the appoint-
ment of a trustee. It is from the court's second opinion, dated
February 3, 1967, that this appeal is taken.

Robert M. Brinley contracted with the mortgagee for the
purchase of 270 subdivided building lots, in addition to exten-
sive recreational and commercial acreage. The contract (which
was subsequently supplemented by modifications not germane
to this appeal) called for a total purchase price of $197,000, of
which $19,500 was to be paid down, $32,500 paid at settlement,
and the remainder of $145,000 secured by a bond and mort-
gage. The initial agreement also made provisions for the "re-
lease" clauses, the second of which stated:

> "That said party of the first part shall further re-
> lease from the lien and effect of said mortgage and
> bond such lots or parcels of land in the amount of
> FOUR THOUSAND ($4,000.00) DOLLARS for
> every ONE THOUSAND ($1,000.00) DOLLARS
> paid by said party of the second part or his assigns
> *against the principal and interest* of said mortgage and
> bond; that such value for purposes of the aforemen-

tioned releases shall be based upon the aforementioned lot (values) as indicated on an attached plat of land affixed hereto and made a part hereof by reference, and not improvements thereon." (Emphasis supplied.)

Robert M. Brinley later assigned his rights and delegated his liabilities under the contract to appellants-mortgagors, consisting of four corporations of which Brinley was president.

In accordance with the terms of the contract, the attorney for the mortgagee prepared a mortgage providing for payment on August 15, 1966 of $5,000 on the principal, plus interest at 5½%, followed by semi-annual payments of $10,000 and interest at 5½%, according to standard amortization tables. In addition to a subordination clause, the mortgage contained the following two "release" clauses:

"(1) By virtue of Mortgagors' downpayment of FIFTY THOUSAND DOLLARS ($50,000.00) on the mortgage premises, they shall be entitled to releases without further consideration, upon their request, to any lots or parcels of land up to the total value of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) as such values are indicated on a certain plat entitled 'Lands of Rolling Hills Development Corporation made by Edward H. Richardson Associates, Inc., Consulting Engineers', Newark, Delaware, dated January 15, 1960, revised May 27, 1964, revised June 2, 1964, and initialled by all parties hereto, excluding any improvements.

"(2) The Mortgagee herein further agrees that after the release values are used up as set out in Paragraph (1) hereof, that it will release from the lien of this Mortgage such other lots or parcels of land on the basis of Four (4) to One (1) ; that is, FOUR THOUSAND DOLLARS ($4,000.00), as such values are indicated on the aforementioned plat, upon the request of Mortgagors and the payment by Mortgagors of every ONE THOUSAND DOLLARS ($1,000.00) *against the principal and interest* of said Mortgage and Note." (Emphasis supplied.)

The question to be decided is whether the lower court erred when it construed Release Clause No. 2 to mean that the mortgagee need only release lots at the ratio of $4,000 for each $1,000 of *principal* paid, disregarding for purposes of credit under the release clause payments against the *interest* on said indebtedness.

Appellants contend that the clear language of both the mortgage and the initial agreement established the four-to-one release ratio on payments of "principal and interest." Therefore, the value of property released should equal four times the sum of the principal and interest payments. For example, the February 15, 1967 payment of $10,000 plus $3,850 interest would permit the release of property listed on the attached plat as worth $55,400 ($13,850 x 4). Appellee contends that under appellants' construction of the release clause the release value of the lots remaining as security for the debt just prior to the final payment of $10,275 ($10,000 principal and $275 interest) would be only $36,415. The appellants' figures tend to conflict, indicating properties valued in excess of $62,500 just prior to final payment. However, appellants concede that even under appellee's calculations, the release value of property subject to the mortgage never dips below three times the principal balance due, and furthermore, the actual sales values of the lots exceed the release values by 20% to 40%.

The lower court adopted appellee's construction of the release clause, that is, "the release of $4,000.00 worth of lots for every payment of $1,000.00 of principal and the payment of such interest as would be due at the time of such payment." The court indicated that, reading the instrument as a whole, it understood that construction to be the intent of the parties. We are unable to agree.

From the record it appears that the parties to the contract negotiated at arms length for a period exceeding four and one half months. During this time they and their counsel scrupulously revised, modified and rewrote the terms of the sale, to accurately reflect the agreed-to obligations of both sides. Under these circumstances, the Court must assume that the terms of the agreement, although novel in conception, were unambiguous and were carefully chosen to express the exact intention of the

parties. *Rea Co. v. State Roads Commission,* 226 Md. 569, 174 A. 2d 577 (1961); *Coopersmith v. Isherwood,* 219 Md. 455, 460, 150 A. 2d 243 (1959). And where the language of the integration is clear, the true test of what was meant is not what the party to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. *Ray v. Eurice,* 201 Md. 115, 127, 93 A. 2d 272 (1952).

Furthermore, we note that the language of the release clause appeared in the original contract, drafted at the request of Brinley, the mortgagors' principal officer, and was later incorporated into the mortgage which was drafted by mortgagee's attorney. Keeping in mind the fact that negotiations were extended and quite detailed, we are compelled to conclude that when appellee's attorney drew up the mortgage, he expected to give effect to the clause in conformity with those guidelines established by the sales contract. We adopt appellants' interpretation of the release clause, not only because a reasonable person in the position of the appellants would give the language such a meaning, but also because the appellants did *in fact* give such a meaning to the clause when they assumed the contract and signed the mortgage. The fact that the language was originally that of the mortgagors' assignor lends credence to the conclusion that this was the appellants' understanding of the agreement. See *Slice v. Carozza Prop., Inc.,* 215 Md. 357, 368, 137 A. 2d 687 (1958); 3 Corbin, *Contracts* § 538, n55 (1960).

The language is clear; it applies the four-to-one ratio to payment "against the principal and interest of said Mortgage and Note." Under a most detailed and objective reading of the instrument, this Court arrives at no interpretation of the release clause other than that propounded by the appellants. We also note that it would have been no difficult exercise in draftsmanship for the appellee to phrase the words in question so as to clearly express the interpretation he urged upon this Court. For example, see *Buckman v. Hill Military Academy,* 223 P. 2d 172, 174 (Ore. 1950), where the release clause read:

"Second party will release from the lien of this mortgage any such lot so sold upon the payment of Three

454

Hundred Dollars, and all interest that may be due and payable on said note at the time said release is demanded."

Finding error in the construction of the Mortgage given by the court below, we reverse and direct the lower court to issue a declaratory decree ordering the mortgagee to execute releases in conformity with this opinion.

*Decree reversed, costs to be paid by appellee.*