This is an interpleader suit under the Mechanics' Lien act. The defendant Joseph Herman, trading as Joseph Herman Construction Company, by contract in writing dated June 27th, 1923, and duly filed, agreed to construct for the complainant a two-story and basement mercantile building in Newark, New Jersey, according to plans and specifications of William E. Lehman, the architect. The contract provided that the whole work under the contract should be completed in four months, from July 1st, 1923. The contract price was $45,000, payable upon certificates of the architect, "seventy-five per cent. of the work done in monthly payments, balance upon completion." The contract also contained the following provision:
"Section 13. It is hereby understood and agreed between the parties hereto that should the contract for the aforesaid building be completed before the time allotted, namely, four months from July 1st, then and in that event the contractor is to receive as additional compensation for his endeavor the sum of one hundred dollars ($100) per day for each and every day he completes his contract before the time expressed in this agreement.
"However, should the contractor not complete the work aforesaid in the allotted time, he is then to reimburse the owner for their loss *Page 591 
of occupancy in the same sum of one hundred dollars ($100) per day for each day that the building remains uncompleted after time allotted in the contract.
"It is, however, distinctly understood that should any strikes or conditions arise beyond the control of the contractors, the time is waived from this contract."
The contract also provided that the contractor should be allowed an extension of time for any time lost by reason of the act, neglect or default of the owner or any of its representatives, but the clause of the contract containing these provisions also provides, "but no such allowance shall be made unless a claim therefor is presented in writing to the architect within forty-eight hours of the occurrence of such delay."
The defendant contractor encountered financial difficulties, and on December 19th, 1923, an involuntary petition in bankruptcy was filed against him, and he was adjudicated a bankrupt on that day. At this time there was remaining unpaid to the contractor on account of the contract price the sum of $11,075, plus $250 for extra work, or $11,325 in all. Prior to the filing of the petition in bankruptcy many of the subcontractors and materialmen filed stop-notices with the complainant. The total amount of claims represented by these stop-notices was $28,042.20, and, in detail, are as follows:
Decker Building Material Company ...................... $3,800.00
Charles Herman ........................................ 800.00
Monahan Stone Company ................................. 3,500.00
L. Wortzel, Inc. ...................................... 1,900.00
C. Strebinger Sons .................................... 952.00
Newark Comp. Fl. Co., Frank Kaiser .................... 194.00
Messer Holle. Inc. .................................. 220.00
Essex Sash and Door Co. ............................... 2,125.65
Franklin Lumber Co. ................................... 3,582.67
Newark Glass Company .................................. 3,650.00
Katchen Shaw Iron Works ............................... 611.81
Offenkrantz Mark .................................... 2,945.00
Elmer D. Wilson ....................................... 1,000.00
Birkenmeier Kuhn Co. ................................ 415.80
Nathan Milstein ....................................... 990.00
R. Young Sons ....................................... 875.75
Guarantee Roofing Co. ................................. 479.52
 *Page 592 
A composition was effected in the bankruptcy proceedings and all of the above-named claimants, with the exception of Charles Herman, Monahan Stone Company, C. Strebinger Sons, Messer 
Holle, Incorporated, R. Young Sons and Guarantee Roofing Company, having claims aggregating the sum of $6,827.27, filed claims in the bankruptcy proceedings, received the dividends in the composition to which they were respectively entitled, and are, therefore, barred from any participation in the fund in the hands of the complainant, the owner.
Notwithstanding the financial difficulties, the contractor finally completed the work under the contract, but I find as a fact from the evidence submitted that the work was not completed until December 28th, 1923.
The bill of complaint in this cause was filed on September 19th, 1924, and all of the claimants who filed stop-notices were made parties defendant; but, in addition to the six claimants last above named, only four of the other defendants, namely, Nathan Milstein, Elmer D. Wilson, Newark Glass Company and Decker Building Material Company, are pressing their claims here. These four claimants having accepted the benefits of the composition as indicated above, I hold are not entitled to participate in the distribution of the fund here.
The complainant claims that because of the delay in the completion of the building under this contract, and in view of the provisions of the thirteenth clause of said contract above recited, there is due to the defendant contractor only $5,075, which sum he offers to pay into this court.
Aside from the question as to which of the stop-notice claimants are entitled to participate in the fund here, which I have already disposed of, the only remaining question at issue is the amount which is due to the contractor from the complainant, and that amount is dependent upon the date upon which the building was finally completed, and the construction of the thirteenth clause of the contract.
The defendant contractor, while admitting the work under the contract was not completed within the time specified in *Page 593 
the contract, claims that it was fully completed on November 30th, 1923, and that because of strikes affecting the steel work, and because of delay of the owner (the complainant) in the selection of face brick, he was prevented from completing the job sooner, and was, therefore, entitled to an extension of time equal to the delay in completion, and is therefore not liable to any deduction from the contract price under the provisions of section 13.
The last architect's certificate was dated November 30th, 1923; was for $8,000, and, with previous certificates, amounted to the sum of $33,925, which showed a balance of the contract price, plus extras, in the hands of the owner of $11,325. It will be noted that this certificate, and previous certificates, show a sum slightly in excess of seventy-five per cent. of the total contract price. No final certificate was ever issued by the contractor, but under date of January 5th, 1924, the contractor wrote the complainant to the effect that on the day previous "we find that the building at the southwest corner of Court and Broad streets is complete in every respect." The architect testified, however, that this did not indicate that the building was not complete before that time, as inspection might not have been made immediately upon completion.
The defendant Joseph Herman and his son, Samuel Herman, who was in active charge of the job in conjunction with his father, both testified that the job was complete in every detail by December 1st, 1923. The witness Walker, who represented the architect and who actually inspected the work during its progress, and who made daily reports thereon to his superior, first testified that the building was "commercially" completed about the middle of December, 1923, later fixing the date as December 22d 1923, and still later, on cross-examination, on being shown the architect's certificate dated November 30th, 1923, concluded that the building was "commercially" completed by November 30th, 1923. He qualified his testimony, however, by stating that this work was done about two years ago, and that his recollection might not be entirely accurate, but based his final testimony *Page 594 
concerning completion on November 30th, 1923, on the architect's certificate. The defendant Milstein, who was employed by the defendant contractor as a mason foreman, testified that all of the mason work was completed about November 12th or 15th, and that the whole job was completed within a few days thereafter. Mr. Strebinger, plumbing contractor, testified that he completed his work a day or two before December 1st; that at that time he went through the building; that he left the water for the entire building turned on; that the heat was on and that he thought the job was practically complete at that time, although he did not make any inspection. Mr. McCann, of the Monahan Stone Company, testified that his contract was completed on October 26th, 1923, and that he thought the whole job was about ninety per cent. complete at that time, but that the plastering had not been commenced and that the trim was not in. Mr. Young, who had the contract for the interior marble work, testified that his work was completed before December 1st, and that it looked to him as though the building was practically complete at that time, although he made no inspection. Charles Herman, the painting subcontractor, who is also a son of the contractor, testified that he finished his work on November 30th or December 1st, and that the job was complete then.
Mr. Dornbush, secretary of the complainant company, testified that the building was not completed until January 3d or 4th, 1924; that on December 1st, the date when the defendant contractor claimed the work was completed, there was practically nothing completed; no radiators in the building; the heating pipes had not been connected to the heating plant; no painting done, and that no painting was begun until January 1st, and that the boiler was not tested until late in December, after Christmas.
Mr. Cohen, the president of the complainant company, testified that on December 1st, 1923, the building was about seventy-five or eighty per cent. complete; that at that time there were no radiators on the job; the water pipes and drain pipes had not been set; painting not completed; heating *Page 595 
plant not in operation, and that the heating plant was not tested until after Christmas.
When the witness Walker was on the stand I was not inclined to place much reliance upon his testimony, because of his apparent uncertainty. At that time he did not have with him his daily reports of inspection, but they were later produced, and an inspection of these reports indicates to my mind that he was testifying truthfully, and that his recollection, as first expressed, was practically correct. This testimony was to the effect that the job was "commercially" complete about the middle of December, and that it was fully completed the latter part of December. These reports are quite illuminating, and convince me that the job was finally completed on December 28th, 1923, and I so find. Further comment on the testimony of the various witnesses with respect to this point is, perhaps, unnecessary, except that I may say that, because of the apparent interest and extreme positiveness of some of them, I place very little credence in their testimony.
It would appear, therefore, that if, under the terms of the contract, the building was to have been completed on November 1st, 1923, that it was actually completed fifty-seven days late, or on December 29th, 1923. The question remaining to be determined, therefore, is, to what, if any, deduction from the contract price because of this delay the complainant owner is entitled.
As already stated, the defendant contractor claims that all of the delay in the completion of the contract was due to strikes in the steel trade and to delays caused by the owner. With respect to the delay claimed to be the fault of the owner on account of his failure to select face brick, that may be disposed of by stating that under the seventh clause of the contract any claim for allowance for such delay should have been presented in writing to the architect within forty-eight hours of the occurrence. No such claim was presented, but, even though such claim had been presented in writing, I feel that the testimony would warrant me in *Page 596 
refusing to allow the contractor any extension of time on this account.
With respect to the delay caused by the steel strike, the testimony of different witnesses varies. The witness Walker, who, by the way, was the complainant's witness, and whose testimony I, therefore, consider binding on the complainant, testified that the delay caused by the steel strike was, approximately, three or four weeks, and that the defendant contractor was entitled to an allowance of a month's time on account of this and other delays for which he was not responsible. Mr. Katchan, the steel contractor, testified that his work was delayed by the steel strike and because of the inability of the steel manufacturer to fill his order promptly for about four weeks. On the other hand, Mr. Cohen and Mr. Dornbush, officers of complainant company, testified that they knew nothing about any steel strike; that no claim for an extension of time on account of such delay had been presented, and that the defendant contractor was not entitled to any extension on that account. The witnesses, Joseph Herman, Philip Herman, Samuel Herman and Nathan Milstein, all testified to a conversation which they alleged to have been had between the defendant contractor and Cohen, Dornbush and another official of the complainant company, in which the complainant agreed to an extension of time on account of the steel strike. This is denied by both Cohen and Dornbush. As indicated above, however, I place very little reliance on the testimony of any of these witnesses on this point. I am convinced that some conversation with reference to this point was had between the parties, but I am unable to determine its purport. In the view I take of the matter, however, this is immaterial. It appears that on August 13th, 1923, the defendant contractor wrote to the architect stating that for the past three weeks the job had been delayed on account of steel deliveries and asking for an extension of time on that account. It appears that no formal written extension was given to the contractor, but, as I read the contract, the contractor was not obliged to make a claim for such extension in writing, nor was any *Page 597 
written extension from either the architect or the owner necessary. The right to the extension on this account is given to the contractor in the thirteenth clause of the contract, and that clause requires no written claim and no formal written extension.
An inspection of the daily inspection report cards made to the architect by the witness Walker indicates to me that the first report of any delay on account of steel work was on August 6th, 1923, and that this delay continued until August 30th, 1923. This is a period of about twenty-five days. It will be seen, therefore, that when the witness Walker testified to a delay of, approximately, a month on account of the steel, and when the witness Katchen testified to a delay of about four weeks, both testifying from their recollection, and without records, they were pretty nearly correct. I am of the opinion, therefore, that the contractor should be allowed an extension of time equal to twenty-five days on account of delays due to strikes and conditions beyond his control. This would, therefore, require completion of the contract on November 26th, 1923. The contract was not actually completed until December 28th, 1923, a delay of thirty-two days.
An examination of the contract, and particularly of section 13 thereof, indicates to me that the provisions of that section are entirely reasonable and as binding upon one of the parties thereto as the other. I have no doubt that if the job had been completed before the expiration of the time limited in that contract, the contractor would have claimed the additional compensation provided in that clause, and I feel that, under the circumstances of this case, the owner is now entitled to the benefits of that section, and, indeed, this is not seriously contested by the defendants.
I find, therefore, that the complainant is entitled to a credit on the contract price of $3,200, which, deducted from the amount of the contract, plus the cost of extra work, will leave a balance of $8,125, plus interest from December 28th, 1923, to date of payment, due to the contractor. *Page 598 
The aggregate amount of the stop-notice claims here allowed being $6,827.27, it appears, therefore, that the fund is sufficient to pay all of these claims in full and still leave a small balance for the contractor. I will therefore advise a decree directing the payment of these six claims in full and in the order of the giving of the stop-notices, which is not in dispute, and the payment to the contractor of the balance remaining after payment of these claims, and in accordance with these conclusions.